FILED

2016 MAY 27 PM 12: 38

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ELAINE C. LAT,<br>ERROL G. LAT,<br>THELMA C. LAT, and<br>CORINNE CHAVEZ,<br>  aka "Corinne Chavez-Serrano,"<br><br>        Defendants. | No. **CR 16 00364**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Pay and Receive Illegal Remunerations for Health Care Referrals; 42 U.S.C. §§ 1320a-7b(b)(1)(A), (b)(2)(A): Illegal Remunerations for Health Care Referrals; 18 U.S.C. § 1519: Destruction of Records in a Federal Investigation; 18 U.S.C. § 2: Aiding and Abetting and Causing An Act To Be Done; 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.   Star Home Health Resources, Inc. ("Star") was a home

health agency located at 1768 Arrow Highway, Suite 105, La Verne, California 91750, within the Central District of California.

2.    Defendant ELAINE C. LAT ("ELAINE") was a managing employee and the Chief Operating Officer of Star.

3.    Defendant ERROL G. LAT ("ERROL") was an owner and operator of Star.  Defendant ERROL was the father of defendant ELAINE.

4.    Defendant THELMA G. LAT ("THELMA") was an owner and operator of Star.  Defendant THELMA was the spouse of defendant ERROL and the mother of defendant ELAINE.

5.    Defendant CORINNE CHAVEZ, also known as ("aka") "Corinne Chavez-Serrano" ("CHAVEZ"), was a marketer who obtained Medicare patients for Star from referring physicians.

6.    Co-conspirator 1 ("CC-1") was an employee of Star who was responsible for payroll and accounting.

The Medicare Program

7.    Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "Federal health care program" as referenced in Title 42, United States Code, Section 1320a-7b(b), and a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

8.    Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."  Each beneficiary was

2

1 | given a unique health insurance claim number ("HICN").

2 |     9.    Health care providers that provided medical services
3 | that were reimbursed by Medicare were referred to as Medicare
4 | "providers."  To participate in Medicare, providers, including
5 | home health agencies ("HHAs"), were required to submit
6 | applications in which the providers agreed to comply with all
7 | Medicare-related laws and regulations, including the anti-
8 | kickback statute (42 U.S.C. § 1320a-7b(b)), which proscribes the
9 | offering, payment, solicitation, or receipt of any remuneration
10 | in exchange for a patient referral or referral of other business
11 | for which payment may be made by any federal health care
12 | program.  If Medicare approved a provider's application,
13 | Medicare assigned the provider a Medicare "provider number,"
14 | which was used for the processing and payment of claims.

15 |     10.  A health care provider with a Medicare provider number
16 | could submit claims to Medicare to obtain reimbursement for
17 | services rendered to Medicare beneficiaries.

18 |     11.  Most providers submitted their claims electronically
19 | pursuant to an agreement they executed with Medicare in which
20 | the providers agreed that: (a) they were responsible for all
21 | claims submitted to Medicare by themselves, their employees, and
22 | their agents; (b) they would submit claims only on behalf of
23 | those Medicare beneficiaries who had given their written
24 | authorization to do so; and (c) they would submit claims that
25 | were accurate, complete, and truthful.

26 |     12.  HHAs who provided services to Medicare beneficiaries,
27 | including Star, could submit claims for reimbursement to the
28 | Medicare program.  Medicare would cover home health services

only if, among other requirements, the Medicare beneficiary was homebound; the beneficiary needed skilled nursing services on an intermittent basis, or physical, speech pathology, or occupational therapy services; the beneficiary was under the care of a qualified physician; and a Plan of Care (CMS Form 485) was established by a physician.

13. CMS contracted with private insurance companies to enroll, process, and pay Medicare claims. National Government Services ("NGS") was the contractor that processed and paid Medicare claims for home health services in Southern California during the relevant time period.

14. A Medicare claim for payment was required to set forth, among other things, the following: the beneficiary's name and unique Medicare identification number; the type of services provided to the beneficiary; the date that the services were provided; and the name and National Provider Identifier ("NPI") of the attending physician who established the plan of care.

B. OBJECTS OF THE CONSPIRACY

15. Beginning no later than in or around August 2012, and continuing through in or around May 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendants ELAINE, ERROL, THELMA, and CHAVEZ, together with CC-1 and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

    a. Knowingly and willfully soliciting or receiving remuneration in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item

1  or service for which payment may be made in whole or in part

2  under a Federal health care program, in violation of Title 42,

3  United States Code, Section 1320a-7b(b)(1)(A); and

4          b.   Knowing and willfully offering to pay or paying

5  any remuneration to any person to induce such person to refer an

6  individual to a person for the furnishing or arranging for the

7  furnishing of any item or service for which payment may be made

8  in whole or in part under a Federal health care program, in

9  violation of Title 42, United States Code, Section 1320a-

10 7b(b)(2)(A).

11 C.   THE MANNER AND MEANS OF THE CONSPIRACY

12      16.  The objects of the conspiracy were carried out, and to

13 be carried out, in substance, as follows:

14          a.   Defendants ELAINE and CHAVEZ developed

15 relationships with certain physicians, whereby the physicians

16 would refer Medicare beneficiaries to Star to receive home

17 health services, which services Star would then bill to

18 Medicare.

19          b.   In exchange for the Medicare referrals, Star

20 would then pay the referring physicians a kickback of

21 approximately $200-$900 for each Medicare beneficiary referred

22 to Star.

23          c.   Star would also pay a kickback to defendant

24 CHAVEZ for each Medicare beneficiary that certain referring

25 physicians referred to Star.  Star paid approximately $50-$200

26 to defendant CHAVEZ as a kickback for each Medicare beneficiary

27 that the physicians referred to Star.

28          d.   In order to pay the kickbacks to defendant CHAVEZ

1  and the referring physicians, defendant ELAINE would withdraw
2  cash from Star's bank accounts and provide the cash to defendant
3  CHAVEZ.   Defendant CHAVEZ would keep the portion of the cash
4  that represented her share of the kickback payments and provide
5  the balance of the cash, i.e., the portion that represented the
6  referring physician's share of the kickback payments, to the
7  referring physicians.

8          e.   At times, when defendant ELAINE was unavailable,
9  defendant THELMA would withdraw cash from Star's bank accounts
10  and provide the cash kickback payments to defendant CHAVEZ, who
11  kept her part and, in turn, provided the balance of the kickback
12  payments to the referring physicians.

13          f.   In order to keep track of the kickback payments
14  that Star made to defendant CHAVEZ and the referring physicians,
15  CC-1 would maintain password-protected spreadsheets that listed
16  each Medicare beneficiary referred to Star and the amount paid
17  to defendant CHAVEZ and the referring physicians in exchange for
18  each patient referral.   Defendants ERROL and THELMA would
19  instruct CC-1 to conceal the spreadsheets from other Star
20  employees and anyone else who did not know about the kickback
21  payments.

22          g.   On approximately a weekly basis, defendant ELAINE
23  and, at times, defendant THELMA, would instruct CC-1 to print a
24  list of patients that the referring physicians recently referred
25  to Star so that defendants ELAINE and THELMA could calculate the
26  kickback payments due to defendant CHAVEZ and the referring
27  physicians.   Defendants ELAINE and THELMA would then communicate
28  the amount of the kickback payments to CC-1, who would record

6

1   the information in the spreadsheets.

2           h.    In or around March 2015, defendants ELAINE and
3   ERROL learned that the Federal Bureau of Investigation was
4   investigating one of Star's referring physicians.  As part of
5   the conspiracy and to conceal and destroy evidence of the
6   kickback payments to defendant CHAVEZ and the referring
7   physicians, defendant ERROL instructed CC-1 to delete from
8   Star's computer system documents and spreadsheets that reflected
9   the kickback payments to defendant CHAVEZ and the referring
10  physicians.

11          i.    From in or around August 2012 to in or around May
12  2016, defendants ELAINE, ERROL, and THELMA caused Star to bill
13  Medicare, and on the basis of those bills Medicare paid Star a
14  total amount of approximately $8,951,951, for home health
15  services.  Of that amount, at least approximately $4,398,599 was
16  paid based on bills for services to patients referred to Star as
17  the result of kickback payments to defendant CHAVEZ and
18  referring physicians.

19  D.   OVERT ACTS

20       17.   In furtherance of the conspiracy and to accomplish its
21  objects, defendants ELAINE, ERROL, THELMA, and CHAVEZ, together
22  with CC-1 and others known and unknown to the Grand Jury,
23  committed and willfully caused others to commit the following
24  overt acts, among others, within the Central District of
25  California and elsewhere:

26       Overt Act No. 1:  On or about July 19, 2013, defendant
27  ELAINE withdrew $2,500 in cash from Star's account at Chase Bank
28  to make kickback payments to defendant CHAVEZ and a referring

1  physician.

2      Overt Act No. 2:  On or about July 19, 2013, defendant

3  CHAVEZ deposited $2,500 in cash, which she had just received

4  from defendant ELAINE, into defendant CHAVEZ's account at Chase

5  Bank.

6      Overt Act No. 3:  On or about July 29, 2014, defendant

7  THELMA withdrew approximately $4,600 in cash from Star's account

8  at Chase Bank to make kickback payments to defendant CHAVEZ and

9  a referring physician.

10      Overt Act No. 4:  On or about April 13, 2015, at the

11  instruction of defendant ERROL, CC-1 deleted from Star's

12  computer system documents and spreadsheets that reflected

13  kickback payments to defendant CHAVEZ and the referring

14  physicians.

COUNTS TWO THROUGH SIX

[42 U.S.C. § 1320a-7b(b)(2)(A)]

18.  The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 14 and 16 through 17 of this Indictment as though set forth in their entirety herein.

19.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the defendants identified below, together with CC-1 and others known and unknown to the Grand Jury, knowingly and willfully paid remuneration, namely, cash in the amounts identified below, drawn on Star's account at Chase Bank and provided to defendant CHAVEZ, which constituted kickbacks to defendant CHAVEZ and a referring physician for referring patients to Star for home health services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DEFENDANT | DATE | AMOUNT |
|-------|-----------|------|--------|
| TWO | ELAINE | 2/22/2013 | $7,300 cash |
| THREE | ELAINE | 3/1/2013 | $7,300 cash |
| FOUR | ELAINE | 7/19/2013 | $2,500 cash |
| FIVE | ELAINE | 2/28/2014 | $4,800 cash |
| SIX | THELMA | 7/29/2014 | $4,600 cash |

COUNTS SEVEN THROUGH ELEVEN

[42 U.S.C. § 1320a-7b(b)(1)(A)]

20.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 14 and 16 through 17 of this Indictment as though set forth in their entirety herein.

21.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the defendant identified below, together with CC-1 and others known and unknown to the Grand Jury, knowingly and willfully received remuneration, namely, cash in the amounts identified below, drawn on Star's account at Chase Bank and provided to defendant CHAVEZ, which constituted kickbacks to defendant CHAVEZ and a referring physician for referring patients to Star for home health services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DEFENDANT | DATE | AMOUNT |
|-------|-----------|------|--------|
| SEVEN | CHAVEZ | 2/22/2013 | $7,300 cash |
| EIGHT | CHAVEZ | 3/1/2013 | $7,300 cash |
| NINE | CHAVEZ | 7/19/2013 | $2,500 cash |
| TEN | CHAVEZ | 2/28/2014 | $4,800 cash |
| ELEVEN | CHAVEZ | 7/29/2014 | $4,600 cash |

COUNT TWELVE

[18 U.S.C. §§ 1519, 2]

22.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 14 and 16 through 17 of this Indictment as though set forth in their entirety herein.

23.   On or about April 13, 2015, in Los Angeles County, in the Central District of California, and elsewhere, defendant ERROL, together with others, including CC-1, knowingly altered, destroyed, mutilated, concealed, and covered up, and willfully caused to be altered, destroyed, mutilated, concealed, and covered up, records, documents, and tangible objects, specifically, records in Star's computer system that reflected kickback payments to defendant CHAVEZ and the referring physicians in exchange for the referral of Medicare beneficiaries to Star, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, specifically, the Federal Bureau of Investigation, and in relation to and contemplation of such a matter and case.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(7), 981(a)(1)(C) and

28 U.S.C. § 2461(c)]

24.   Pursuant to Rule 32.2(a) Fed. R. Crim. P., notice is hereby given to defendants ELAINE, ERROL, THELMA, and CHAVEZ (collectively, the "defendants") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under any of the Counts One through Eleven of this Indictment.

25.   Defendants shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense set forth in any of Counts One through Eleven of this Indictment; and

b.   A sum of money equal to the total value of the property described in subparagraph a.  For each of Counts One through Eleven for which more than one defendant is found guilty, each such defendant shall be jointly and severally liable for the entire amount forfeited pursuant to that Count.

26.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if,

12

as a result of any act or omission of a defendant, the property
described in the preceding paragraph, or any portion thereof (a)
cannot be located upon the exercise of due diligence; (b) has
been transferred, sold to or deposited with a third party; (c)
has been placed beyond the jurisdiction of the Court; (d) has
been substantially diminished in value; or (e) has been
commingled with other property that cannot be divided without
difficulty.

A TRUE BILL

/S/
_____
Foreperson

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

GEORGE CARDONA
Assistant United States Attorney
Chief, Major Frauds Section

RANEE KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds Section

PABLO QUINONES
Deputy Chief, Fraud Section
United States Department of Justice

DIIDRI ROBINSON
Assistant Chief, Fraud Section
United States Department of Justice

ALEXANDER F. PORTER
Trial Attorney, Fraud Section
United States Department of Justice