FILED

2016 JUN 10 PM 1:40

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                       January 2016 Grand Jury

11   UNITED STATES OF AMERICA,          No. CR 16-00364(A)-PSG

12              Plaintiff,              F I R S T
                                        S U P E R S E D I N G
13              v.                      I N D I C T M E N T

14   KAIN KUMAR, M.D.,                  [18 U.S.C. § 371: Conspiracy
     ELAINE C. LAT,                     to Pay and Receive Illegal
15   ERROL G. LAT,                      Remunerations for Health Care
     THELMA C. LAT, and                 Referrals; 42 U.S.C.
16   CORINNE CHAVEZ,                    §§ 1320a-7b(b)(1)(A),
        aka "Corinne Chavez-Serrano,"   (b)(2)(A): Illegal
17                                      Remunerations for Health Care
              Defendants.               Referrals; 18 U.S.C. § 1519:
18                                      Destruction of Records in a
                                        Federal Investigation; 18
19                                      U.S.C. § 2: Aiding and
                                        Abetting and Causing an Act
20                                      to be Done; 18 U.S.C. §§
                                        982(a)(7), 981(a)(1)(C), 28
21                                      U.S.C. § 2461(c): Criminal
                                        Forfeiture]
22

23        The Grand Jury charges:

24                            COUNT ONE

25                       [18 U.S.C. § 371]

26   A.   INTRODUCTORY ALLEGATIONS

27        At all times relevant to this First Superseding Indictment:

28

1.   Defendant KAIN KUMAR, M.D. ("KUMAR") was a physician who owned and operated a medical clinic located at 540 West Palmdale Boulevard, Suite B, Palmdale, California 93551, within the Central District of California.   Defendant KUMAR also owned and operated medical clinics in Rosamond and Ridgecrest, California.

2.   Star Home Health Resources, Inc. ("Star") was a home health agency located at 1768 Arrow Highway, Suite 105, La Verne, California 91750, within the Central District of California.

3.   Defendant ELAINE C. LAT ("ELAINE") was a managing employee and the Chief Operating Officer of Star.

4.   Defendant ERROL G. LAT ("ERROL") was an owner and operator of Star.   Defendant ERROL was the father of defendant ELAINE.

5.   Defendant THELMA G. LAT ("THELMA") was an owner and operator of Star.   Defendant THELMA was the spouse of defendant ERROL and the mother of defendant ELAINE.

6.   Defendant CORINNE CHAVEZ, also known as ("aka") "Corinne Chavez-Serrano" ("CHAVEZ"), was a marketer who obtained Medicare patients for Star from referring physicians, including defendant KUMAR.

7.   Co-conspirator 1 ("CC-1") was an employee of Star who was responsible for payroll and accounting.

The Medicare Program

8.   Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.   Medicare was administered

2

1   by the Centers for Medicare and Medicaid Services ("CMS"), a
2   federal agency under the United States Department of Health and
3   Human Services.  Medicare was a "Federal health care program" as
4   referenced in Title 42, United States Code, Section 1320a-7b(b),
5   and a "health care benefit program" as defined by Title 18,
6   United States Code, Section 24(b).
7        9.   Individuals who qualified for Medicare benefits were
8   referred to as Medicare "beneficiaries."  Each beneficiary was
9   given a unique health insurance claim number ("HICN").
10       10.  Health care providers that provided medical services
11  that were reimbursed by Medicare were referred to as Medicare
12  "providers."  To participate in Medicare, providers, including
13  home health agencies ("HHAs"), were required to submit
14  applications in which the providers agreed to comply with all
15  Medicare-related laws and regulations, including the anti-
16  kickback statute (42 U.S.C. § 1320a-7b(b)), which proscribes the
17  offering, payment, solicitation, or receipt of any remuneration
18  in exchange for a patient referral or referral of other business
19  for which payment may be made by any federal health care
20  program.  If Medicare approved a provider's application,
21  Medicare assigned the provider a Medicare "provider number,"
22  which was used for the processing and payment of claims.
23       11.  A health care provider with a Medicare provider number
24  could submit claims to Medicare to obtain reimbursement for
25  services rendered to Medicare beneficiaries.
26       12.  Most providers submitted their claims electronically
27  pursuant to an agreement they executed with Medicare in which
28  the providers agreed that: (a) they were responsible for all

3

claims submitted to Medicare by themselves, their employees, and their agents; (b) they would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) they would submit claims that were accurate, complete, and truthful.

13. HHAs who provided services to Medicare beneficiaries, including Star, could submit claims for reimbursement to the Medicare program. Medicare would cover home health services only if, among other requirements, the Medicare beneficiary was homebound; the beneficiary needed skilled nursing services on an intermittent basis, or physical, speech pathology, or occupational therapy services; the beneficiary was under the care of a qualified physician; and a Plan of Care (CMS Form 485) was established by a physician.

14. CMS contracted with private insurance companies to enroll, process, and pay Medicare claims. National Government Services ("NGS") was the contractor that processed and paid Medicare claims for home health services in Southern California during the relevant time period.

15. A Medicare claim for payment was required to set forth, among other things, the following: the beneficiary's name and unique Medicare identification number; the type of services provided to the beneficiary; the date that the services were provided; and the name and National Provider Identifier ("NPI") of the attending physician who established the plan of care.

B.   OBJECTS OF THE CONSPIRACY

16. Beginning no later than in or around August 2012, and continuing through in or around May 2016, in Los Angeles County,

4

1  within the Central District of California, and elsewhere,
2  defendants KUMAR, ELAINE, ERROL, THELMA, and CHAVEZ, together
3  with CC-1 and others known and unknown to the Grand Jury,
4  knowingly combined, conspired, and agreed to commit the
5  following offenses against the United States:
6        a.   Knowingly and willfully soliciting or receiving
7  remuneration in return for referring an individual to a person
8  for the furnishing or arranging for the furnishing of any item
9  or service for which payment may be made in whole or in part
10 under a Federal health care program, in violation of Title 42,
11 United States Code, Section 1320a-7b(b)(1)(A); and
12       b.   Knowing and willfully offering to pay or paying
13 any remuneration to any person to induce such person to refer an
14 individual to a person for the furnishing or arranging for the
15 furnishing of any item or service for which payment may be made
16 in whole or in part under a Federal health care program, in
17 violation of Title 42, United States Code, Section 1320a-
18 7b(b)(2)(A).
19 C.   THE MANNER AND MEANS OF THE CONSPIRACY
20      17.  The objects of the conspiracy were carried out, and to
21 be carried out, in substance, as follows:
22       a.   Defendants ELAINE and CHAVEZ developed
23 relationships with certain physicians, including defendant
24 KUMAR, whereby the physicians would refer Medicare beneficiaries
25 to Star to receive home health services, which services Star
26 would then bill to Medicare.
27       b.   In exchange for the Medicare referrals, Star
28 would then pay the referring physicians, including defendant

5

1  KUMAR, a kickback of approximately $200-$900 for each Medicare
2  beneficiary referred to Star.

3          c.    Star would also pay a kickback to defendant
4  CHAVEZ for each Medicare beneficiary that certain referring
5  physicians, including defendant KUMAR, referred to Star.  Star
6  paid approximately $50-$200 to defendant CHAVEZ as a kickback
7  for each Medicare beneficiary that the physicians referred to
8  Star.

9          d.    In order to pay the kickbacks to defendant CHAVEZ
10  and the referring physicians, including defendant KUMAR,
11  defendant ELAINE would withdraw cash from Star's bank accounts
12  and provide the cash to defendant CHAVEZ.  Defendant CHAVEZ
13  would keep the portion of the cash that represented her share of
14  the kickback payments and provide the balance of the cash, i.e.,
15  the portion that represented the referring physician's share of
16  the kickback payments, to the referring physicians, including
17  defendant KUMAR.

18          d.    At times, when defendant ELAINE was unavailable,
19  defendant THELMA withdrew cash from Star's bank accounts and
20  provided the cash kickback payments to defendant CHAVEZ, who
21  kept her part and, in turn, provided the balance of the kickback
22  payments to the referring physicians, including defendant KUMAR.

23          e.    In order to keep track of the kickback payments
24  that Star made to defendant CHAVEZ and the referring physicians,
25  including defendant KUMAR, CC-1 would maintain password-
26  protected spreadsheets that listed each Medicare beneficiary
27  referred to Star and the amount paid to defendant CHAVEZ and
28  referring physicians in exchange for each patient referral.

1  Defendants ERROL and THELMA would instruct CC-1 to conceal the
2  spreadsheets from other Star employees and anyone else who did
3  not know about the kickback payments.

4          f.    On approximately a weekly basis, defendant ELAINE
5  and, at times, defendant THELMA, would instruct CC-1 to print a
6  list of patients that the referring physicians recently referred
7  to Star so that defendants ELAINE and THELMA could calculate the
8  kickback payments due to defendant CHAVEZ and the referring
9  physicians, including defendant KUMAR.  Defendants ELAINE and
10  THELMA would then communicate the amount of the kickback
11  payments to CC-1, who would record the information in the
12  spreadsheets.

13          g.    In or around March 2015, defendants ELAINE and
14  ERROL learned that the Federal Bureau of Investigation was
15  investigating defendant KUMAR.  As part of the conspiracy and to
16  conceal and destroy evidence of the kickback payments to
17  defendant CHAVEZ and the referring physicians, including
18  defendant KUMAR, defendant ERROL instructed CC-1 to delete from
19  Star's computer system documents and spreadsheets that reflected
20  the kickback payments to defendants KUMAR and CHAVEZ, and to
21  other referring physicians.

22          h.    From in or around August 2012 to in or around May
23  2016, defendants ELAINE, ERROL, and THELMA caused Star to bill
24  Medicare, and on the basis of those bills Medicare paid Star a
25  total amount of approximately $8,951,951, for home health
26  services.  Of that amount, at least approximately $4,398,599 was
27  paid based on bills for services to patients referred to Star as
28  the result of kickback payments to defendants KUMAR and CHAVEZ.

D.   OVERT ACTS

18.   In furtherance of the conspiracy and to accomplish its objects, defendants KUMAR, ELAINE, ERROL, THELMA, and CHAVEZ, together with CC-1 and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:   On or about July 19, 2013, defendant ELAINE withdrew $2,500 in cash from Star's account at Chase Bank to make kickback payments to defendants KUMAR and CHAVEZ.

Overt Act No. 2:   On or about July 19, 2013, defendant CHAVEZ deposited $2,500 in cash, which she had just received from defendant ELAINE, into defendant CHAVEZ's account at Chase Bank.

Overt Act No. 3:   On or about July 29, 2014, defendant THELMA withdrew approximately $4,600 in cash from Star's account at Chase Bank to make kickback payments to defendants KUMAR and CHAVEZ.

Overt Act No. 4:   On or about April 13, 2015, at the instruction of defendant ERROL, CC-1 deleted from Star's computer system documents and spreadsheets that reflected kickback payments to defendant CHAVEZ and the referring physicians, including defendant KUMAR.

## COUNTS TWO THROUGH SIX

### [42 U.S.C. § 1320a-7b(b)(2)(A)]

19.  The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15 and 17 through 18 of this First Superseding Indictment as though set forth in their entirety herein.

20.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the defendants identified below, together with CC-1 and others known and unknown to the Grand Jury, knowingly and willfully paid remuneration, namely, cash in the amounts identified below, drawn on Star's account at Chase Bank and provided to defendant CHAVEZ, which constituted kickbacks to defendants KUMAR and CHAVEZ for referring patients to Star for home health services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DEFENDANTS | DATE | AMOUNT |
|-------|-----------|------|--------|
| TWO | ELAINE | 2/22/2013 | $7,300 cash |
| THREE | ELAINE | 3/1/2013 | $7,300 cash |
| FOUR | ELAINE | 7/19/2013 | $2,500 cash |
| FIVE | ELAINE | 2/28/2014 | $4,800 cash |
| SIX | THELMA | 7/29/2014 | $4,600 cash |

COUNTS SEVEN THROUGH ELEVEN

[42 U.S.C. § 1320a-7b(b)(1)(A)]

21.  The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15 and 17 through 18 of this First Superseding Indictment as though set forth in their entirety herein.

22.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the defendant identified below, together with CC-1 and others known and unknown to the Grand Jury, knowingly and willfully received remuneration, namely, cash in the amounts identified below, drawn on Star's account at Chase Bank and provided to defendant CHAVEZ, which constituted kickbacks to defendants KUMAR and CHAVEZ for referring patients to Star for home health services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DEFENDANT | DATE | AMOUNT |
|---|---|---|---|
| SEVEN | CHAVEZ | 2/22/2013 | $7,300 cash |
| EIGHT | CHAVEZ | 3/1/2013 | $7,300 cash |
| NINE | CHAVEZ | 7/19/2013 | $2,500 cash |
| TEN | CHAVEZ | 2/28/2014 | $4,800 cash |
| ELEVEN | CHAVEZ | 7/29/2014 | $4,600 cash |

COUNTS TWELVE THROUGH FOURTEEN

[42 U.S.C. § 1320a-7b(b)(1)(A)]

23. The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15 and 17 through 18 of this First Superseding Indictment as though set forth in their entirety herein.

24. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the defendant identified below, together with CC-1 and others known and unknown to the Grand Jury, knowingly and willfully received remuneration, namely, cash in the amounts identified below, drawn on defendant CHAVEZ's account at Chase Bank and provided to defendant KUMAR, which constituted kickbacks to defendant KUMAR for referring patients to Star for home health services, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare:

| COUNT | DEFENDANT | DATE | AMOUNT |
| --- | --- | --- | --- |
| TWELVE | KUMAR | 2/28/2013 | $5,000 cash |
| THIRTEEN | KUMAR | 3/7/2013 | $5,300 cash |
| FOURTEEN | KUMAR | 3/7/2014 | $3,500 cash |

11

COUNT FIFTEEN

[18 U.S.C. §§ 1519, 2]

25.    The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15 and 17 through 18 of this First Superseding Indictment as though set forth in their entirety herein.

26.    On or about April 13, 2015, in Los Angeles County, in the Central District of California, and elsewhere, defendant ERROL, together with others, including CC-1, knowingly altered, destroyed, mutilated, concealed, and covered up, and willfully caused to be altered, destroyed, mutilated, concealed, and covered up, records, documents, and tangible objects, specifically, records in Star's computer system that reflected kickback payments to defendants KUMAR and CHAVEZ, and other referring physicians, in exchange for the referral of Medicare beneficiaries to Star, with the intent to impede, obstruct, and influence the investigation and proper administration of such matters within the jurisdiction of a department and agency of the United States, specifically, the Federal Bureau of Investigation, and in relation to and contemplation of any such matter and case.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(7), 981(a)(1)(C) and

28 U.S.C. § 2461(c)]

27.    Pursuant to Rule 32.2(a) Fed. R. Crim. P., notice is hereby given to defendants KUMAR, ELAINE, ERROL, THELMA, and CHAVEZ (collectively, the "defendants") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under any of Counts One through Fourteen of this First Superseding Indictment.

28.    Defendants shall forfeit to the United States the following property:

a.    All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense set forth in any of Counts One through Fourteen of this First Superseding Indictment; and

b.    A sum of money equal to the total value of the property described in subparagraph a.  For each of Counts One through Fourteen for which more than one defendant is found guilty, each such defendant shall be jointly and severally liable for the entire amount forfeited pursuant to that Count.

29.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if,

13

1  as a result of any act or omission of a defendant, the property

2  described in the preceding paragraph, or any portion thereof (a)

3  cannot be located upon the exercise of due diligence; (b) has

4  been transferred, sold to or deposited with a third party; (c)

5  has been placed beyond the jurisdiction of the Court; (d) has

6  been substantially diminished in value; or (e) has been

7  commingled with other property that cannot be divided without

8  difficulty.

A TRUE BILL

9

10

11  _____
   Foreperson

12  EILEEN M. DECKER
   United States Attorney

13

14  _(signature)_

15  LAWRENCE S. MIDDLETON
   Assistant United States Attorney

16  Chief, Criminal Division

17  GEORGE CARDONA
   Assistant United States Attorney

18  Chief, Major Frauds Section

19  RANEE KATZENSTEIN
   Assistant United States Attorney

20  Deputy Chief, Major Frauds Section

21

22  PABLO QUINONES
   Deputy Chief, Fraud Section

23  United States Department of Justice

24  DIIDRI ROBINSON
   Assistant Chief, Fraud Section

25  United States Department of Justice

26  ALEXANDER F. PORTER
   Trial Attorney, Fraud Section

27  United States Department of Justice

28